# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LORING, | ) 1:10cv01949 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Kimberly Loring ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on August 10, 2007, alleging disability since March 6, 2007, due to low back pain and high blood pressure. AR 126-131, 143-151. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Law Judge ("ALJ"). AR 69, 81, 98. ALJ Michael Haubner held a hearing on September 9, 2009, and issued a decision denying benefits on November 18, 2009. AR 36-68, 22-32. The Appeals Council denied review on July 8, 2010. AR 7-9.

Hearing Testimony

ALJ Haubner held a hearing on September 9, 2009, in Fresno, California. Plaintiff appeared with her representative, Gina Fazio. Vocational expert ("VE") Kathy Magering also appeared and testified. AR 36.

Plaintiff was born in August 1963 and completed the eleventh grade. AR 43. Plaintiff has a culinary certificate from Cesar Chavez Adult Education and a Certified Nursing Assistant certificate. She also went to City College but did not finish because of medical problems. AR 44. She worked for six months in 1995 as a nursing assistant, for two months in 1997 packing fruit, for four to six months with in-home health care services in 2002 and for four months clearing tables at Hometown Buffet in 2006-2007. AR 45-46.

Plaintiff lives with her daughter and her daughter's husband, and her three grandchildren. Her driver's license expired in August 2009 and she has not driven since then. AR 49.

Plaintiff sat in a wheelchair at the hearing and testified that it was prescribed by her doctor last year. AR 50. She mostly uses her walker inside the house, however. AR 51. She has had the walker since 2007. AR 52.

Plaintiff has her own room but does not make her bed or do any chores around the house. She can make herself a simple meal once a day but does not do dishes, sweep, vacuum, dust or take out the trash. AR 52-53. She goes grocery shopping maybe once a month. AR 53. Plaintiff goes to church once a week. AR 53. Plaintiff used to sew, but has not since 2007 because of pain in her lower back, arms and legs. AR 54-55, 66. She watches television, listens to music and reads about four to five hours a day. AR 54-55. Plaintiff does not watch, or play with, her grandchildren because she cannot lift them. AR 55.

Plaintiff thought that she could stand without a walker for two or three minutes and could walk without a walker about 10 feet. With her walker, Plaintiff could also walk about 10 feet. She could sit for an hour. Plaintiff lies down and elevates her feet for about six hours a day. AR

57. She thought that she could concentrate on one thing for about 10 to 15 minutes. AR 57. Plaintiff estimated that she could lift and carry five pounds. AR 59.

Plaintiff testified that she was compliant with her treatment. She was 5 feet, 10 inches tall and weighed 280 pounds. Doctors have told her to try and lose weight and she is trying to watch what she eats. She estimated that she followed her diet about 90 percent of the time. She also still smokes cigarettes, even though the doctors have told her to stop. AR 58.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift and carry 100 pounds occasionally, 50 pounds frequently, stand and walk for six hours with normal breaks and sit without restriction. The VE testified that this person could perform Plaintiff's past relevant work as a packer and nurse assistant, both as performed and as set forth in the Dictionary of Occupational Titles ("DOT"). This person could also perform the entire world of sedentary through heavy work. AR 62-63.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and walk about six hours and sit for about six hours. This person needed to avoid concentrated exposure to odors, dust, fumes, gases, poor ventilation, etc. The VE testified that this person could perform the packer position as performed and as described in the DOT. This person could perform the nurse assistant position as described in the DOT, but not as performed. This person could also perform the medium positions of transporter of patients, sandwich maker and linen room attendant. AR 63-64.

For the third hypothetical, the ALJ asked the VE to assume a person who could stand for two to three minutes, walk for 10 feet with or without a walker, sit for one hour at a time, lift and carry five pounds and concentrate for 10 to 15 minutes at a time. This person would also need to lie down for six hours out of eight. The VE testified that this person cannot perform any work. AR 65.

<u>Medical Record</u>

Plaintiff was seen at University Medical Center on October 26, 2006, in follow up for low back pain and hypertension. She complained of wheezing, low back pain and a 20 pound weight

gain over the past year. She was diagnosed with hypertension, low back pain, asthma and fibroids. Plaintiff was using Vicodin and requested a TENS unit. AR 202-203.

On June 5, 2007, Plaintiff was seen at Community Medical Center in follow up for back pain. She requested a TENS unit and reported that she could not get one after her last prescription was lost or stolen. She denied any other complaints. On examination, there was no edema in her extremities, pulses were normal and straight leg raising was negative. Plaintiff was diagnosed with high blood pressure, under good control, chronic back pain and stable asthma. Warm compresses and weight reduction were suggested for her back pain and her medications were refilled. AR 200.

On July 17, 2007, Plaintiff was admitted to Community Regional Medical Center for control of left hip and low back pain after she ran out of medication five days prior. On examination, Robert Tevendale, M.D, noted that Plaintiff was tearful, "out of proportion to what was going on with her." She had normal motor strength in her upper and lower extremities, though it was difficult to evaluate her left leg because even if her toe was moved, she would cry and say she had a lot of pain in her hip area. Dr. Tevendale diagnosed leg pain, possibly bursitis on the left, hypertension, pain and asthma, which was currently under control. He recommended a trigger point injection for her hip, morphine and stronger opiates and physical therapy. AR 189-190.

On admission, Plaintiff was given Vicodin initially but was switched to a morphine IV. Sy Sophamixay-Essgian, D.O., noted that her pain was "so out of proportion and etiology was unclear and unexplained." A July 17, 2007, MRI of her lumbar spine showed degenerative changes at multiple levels with grade 1 spondylolisthesis at L4-5, mild bulging without focal stenosis or impingement at L5-S1, and mild foraminal narrowing at L4-5. AR 185, 194-195. A July 19, 2007, x-ray of her left hip was negative. AR 196.

Plaintiff was discharged on July 21, 2007. On discharge, her pain was improving and she was making progress with her mobility. Plaintiff was ambulating to the door and around her room. The physical therapist recommended a walker, a bedside commode and a home health

physical therapist.  Plaintiff was in good spirits and smiling and laughing on discharge.  She was given medications for pain, hypertension, anemia and asthma.  AR 186.

On July 28, 2007, Plaintiff returned to Dr. Sophamixay-Essgian in follow-up after her release from the hospital.  She continued to complain of pain in the left hip area and rated it at a 7-8 out of 10.  Plaintiff denied any numbness and was able to walk with her walker.  She reported that her pain was better and relieved with morphine.  She was not having any asthma attacks, chest pain or shortness of breath.  On examination, Plaintiff was in mild to moderate pain.  She could not perform straight leg raising.  There were no sensory deficits.  Dr. Sophamixay-Essgian diagnosed chronic low back pain with positive MRI findings and recommended that Plaintiff continue physical therapy and increase her medications.  AR 199.

On November 9, 2007, Plaintiff saw Abbas Mehdi, M.D., for a consultive examination.  Plaintiff complained of constant low back pain since 2000, resulting in significant restricted range of motion, difficulty walking and standing.  Plaintiff was living with friends and last worked in March 2007.  On examination, Plaintiff was obese and cooperative, with some symptom magnification and poor effort.  Plaintiff walked without evidence of a limp.  Range of motion of the lumbar spine was limited, though the examination did not show any significant findings.  Mostly due to subcutaneous fat, the paraspinal muscles could not be palpated.  Straight leg raising was to 80 degrees bilaterally without pain.  Range of motion of the hips was also limited.  There was no evidence of joint pain, swelling, tenderness or inflammation.  Plaintiff gave poor effort on grip strength testing bilaterally and the left hand measured at 0.  Motor strength was normal.   Plaintiff had normal muscle bulk and tone with no evidence of muscle atrophy.  She had patchy sensation loss in the bilateral lower extremities, non-localized pain and decreased reflexes.  AR 204-207.

Dr. Mehdi diagnosed spondylosis of the lumbar spine and chronic low back pain with no signs of radiculopathy.  He believed that Plaintiff could lift and carry 100 pounds occasionally, 50 pounds frequently, stand and walk for six hours with normal breaks and sit without restriction.  AR 207.

On November 30, 2007, State Agency physician Brian J. Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Ginsburg opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and walk about six hours and sit for about six hours. Plaintiff had to avoid concentrated exposure to odors, dust, fumes, gases, poor ventilation, etc. AR 209-213.

Plaintiff was seen at Community Medical Centers on January 7, 2008, and rated her back pain as a 6 out of 10. She also reported tingling in her face, blurry vision, stiffness of her body, swelling of her hands, sporadic pain shooting down her left leg and bladder incontinence. On examination, Plaintiff was in mild to moderate pain. There was trace bipedal edema. Pulses were intact and her neurological examination was grossly normal. Straight leg raising was negative. She was diagnosed with myalgia back pain and encouraged to diet, exercise and stop smoking. Her medications were refilled. Plaintiff's hypertension was well-controlled. AR 219-220.

On January 24, 2008, Plaintiff returned to Community Medical Centers and reported a 15 percent improvement in her pain. She continued to complain of back pain and requested a walker/sitting stool. Plaintiff had grossly normal strength and slightly decreased sensation on the left. A test for rheumatoid arthritis was negative. She was diagnosed with chronic back pain and encouraged to lose weight. AR 218.

Plaintiff underwent a physical therapy assessment on February 22, 2008, for chronic low back pain and fibromyalgia. At the time, Plaintiff was using a wheeled walker with a seat and had great difficulty with transitional movements and sit to stand transfers. She had limited strength in her trunk and bilateral lower extremities and decreased range of motion in her lumbar spine. Manual muscle testing was limited by pain. AR 316-321.

On May 14, 2008, Plaintiff was discharged from physical therapy after attending 5 out of 14 sessions. The therapist could not fully evaluate the outcome of treatment "secondary to nonattendance." Treatment consisted of therapeutic exercise, a home exercise program, hot pack, TENS unit, traction, and patient education. Plaintiff reported decreased pain with use of the TENS unit. However, Plaintiff demonstrated poor compliance with treatment regime and

home exercise program.  Plaintiff was instructed to continue with the TENS unit and home exercise program.  AR 314.

Plaintiff was seen at Community Medical Center for a disability examination on May 20, 2008, for low back pain.  She reported that she could not walk because of pain and was using a walker.  The treating source noted that her pain seemed "out of proportion to physical findings."  Plaintiff was restricted to light work only, with lifting no more than 20 pounds, no repetitive hand movements and standing/walking for no more than 15 minutes per hour.  She was also precluded from driving, climbing ladders and using power equipment.  AR 345.

On July 3, 2008, Plaintiff was seen in the emergency room for pain in the left side of her chest.  AR 300-301.  A chest x-ray showed no acute cardiopulmonary process.  AR 311.  An angiogram performed on July 4, 2008, showed no pneumonia, no plural effusion and no aortic dissection or aneurysm.  The test showed mediastinal lymphadenopathy and subpeural cystic lung changes.  AR 313.

Plaintiff was seen in Neurosurgery on July 14, 2008, with complaints of low back pain and left arm and leg pain.  The treatment notes are difficult to read, though it appears examination revealed decreased strength and sensation in the left arm.  An MRI and CT scan were scheduled.  AR 291.

Plaintiff underwent an MRI of her cervical spine on August 27, 2008.  The test revealed posterior central focal bulge or mild protrusion at C5-6, with subtle impression upon the thecal sac and cord, but without evidence of impingement or syrinx/myelomalacia.  AR 290.

Plaintiff was hospitalized on February 7, 2009, for chest pain.  She continued to smoke a third of a pack of cigarettes a day and reported that she last used cocaine four years ago.  AR 262, 275.  A chest x-ray showed moderate cardiomegaly, possible early congestion.  AR 286.  Pulmonary angiography showed no defect suggestive of a pulmonary embolism.  The heart was normal in size with no pericardial effusion.  Her lungs demonstrated some cystic changes and paracicatricial emphysema in the lung apices, right greater than left.  AR 287.

On May 5, 2009, Plaintiff was seen for hypertension, chronic back pain and fibromyalgia. She was ordered to continue her medication for hypertension and fibromyalgia. Her morphine was increased. AR 337.

Plaintiff underwent a stress test on May 8, 2009. There were no new changes suggestive of ischemia. AR 259.

A myocardial perfusion and function study performed on May 9, 2009, showed an apparent perfusion defect of the anterior and inferior walls. AR 258.

Plaintiff was hospitalized on May 29, 2009, for chest pain. AR 224. She also reported chronic low back pain, fibromyalgia and hypertension. During admission, an examiner noted that a prior head CT and cervical spine MRI were not clinically significant, though she did have an abnormal EKG. AR 224, 234, 256, 289, 290. A chest x-ray taken on May 29, 2009, showed borderline cardiomegaly, but otherwise no acute cardiopulmonary process. AR 255.

An ultrasound study of the deep venous system of the bilateral legs was normal. AR 257.

Plaintiff was discharged on June 1, 2009, in improved condition and ordered to continue a low salt diet and return to most activities cautiously. AR 226-227.

Plaintiff returned to Community Medical Center for follow-up. The treating source noted that her chest pain was not likely cardiac in nature. AR 336.

Plaintiff was seen again on July 2, 2009, for evaluation of left-sided chest pain. Plaintiff was using a walker. The treating source opined that the pain was non-cardiac in nature and would have no long term clinical consequences. AR 333.

On August 3, 2009, Plaintiff was seen at Community Medical Centers for pain management. She complained of chronic low back and leg pain. Plaintiff signed a pain management agreement and was instructed to exercise and lose weight. AR 332.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of cervical spine degenerative disc disease, spondylolisthesis at L4-L5 with low back pain, fibromyalgia and obesity. AR 27. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 50 pounds occasionally, 25 pounds frequently, and sit, stand and/or

walk for six hours.  Plaintiff needed to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  AR 27.  With this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a packer/agricultural produce and nurse assistant.  Alternatively, Plaintiff could perform a significant number of jobs in the national economy.  AR 30.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

1  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
2  Cir. 1990).
3         In an effort to achieve uniformity of decisions, the Commissioner has promulgated
4  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20
5  C.F.R. §§ 404.1520 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1)
6  had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an
7  impairment or a combination of impairments that is considered "severe" (cervical spine
8  degenerative disc disease, spondylolisthesis at L4-L5 with low back pain, fibromyalgia and
9  obesity) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3)
10 does not have an impairment or combination of impairments which meets or equals one of the
11 impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past
12 relevant work; and alternatively, (5) can perform jobs that exist in significant numbers in the
13 national economy.  AR 27-30.
14        Here, Plaintiff argues that the ALJ improperly rejected the opinion of her treating
15 physician.

16                                              **DISCUSSION**

17        Cases in this circuit distinguish among the opinions of three types of physicians: (1) those
18 who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant
19 (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining
20 physicians).  As a general rule, more weight should be given to the opinion of a treating source
21 than to the opinion of doctors who do not treat the claimant.  *Orn v. Astrue*, 495 F.3d 625, 631
22 (9th Cir.2007); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating
23 doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and
24 convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the
25 treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this
26 opinion without providing "specific and legitimate reasons" supported by substantial evidence in
27 the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).
28

1    The opinion of an examining physician is, in turn, entitled to greater weight than the
2 opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);
3 *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating
4 physician, the Commissioner must provide "clear and convincing" reasons for rejecting the
5 uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion
6 of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,
7 can only be rejected for specific and legitimate reasons that are supported by substantial evidence
8 in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

9    The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence
10 that justifies the rejection of the opinion of either an examining physician or a treating physician.
11 *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can
12 reject the opinion of a treating or examining physician, based in part on the testimony of a
13 nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th
14 Cir.1989); *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For
15 example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating
16 physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the
17 opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in
18 original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ
19 also relied on laboratory test results, on contrary reports from examining physicians, and on
20 testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

21    Here, the record contains the opinions of three physicians.  On November 9, 2007,
22 consultive examiner Dr. Mehdi opined that Plaintiff could lift 100 pounds occasionally, 50
23 pounds frequently, sit and walk for six hours and sit without restriction.  AR 207.  On November
24 30, 2007, State Agency physician Dr. Ginsburg opined that Plaintiff could lift 50 pounds
25 occasionally, 25 pounds frequently, sit and walk for six hours and sit for six hours.  He also
26 opined that Plaintiff needed to avoid dust, gases, fumes, etc.  AR 209-215.  Finally, on May 20,

27
28

2008, a treating source[2] opined that Plaintiff could lift up to 20 pounds and stand and walk for up to 15 minutes per hour, with no repetitive hand movements, driving, climbing ladders or using power equipment.  AR 345.

The ALJ reviewed all three opinions and eventually adopted the opinion of Dr. Ginsburg, the State Agency physician.  AR 29.  In rejecting the opinion of the treating source, he first noted that "no objective findings were recorded other than subjective pain."  AR 28.  According to the treatment notes, Plaintiff complained of chronic low back pain, decreased range of motion and pain with straight leg raising and crossed leg raising bilaterally.  In fact, the physician recognized the subjective nature of her complaints by concluding that her pain seemed out of proportion to the physical findings.  AR 345.  The ALJ is correct in questioning the opinion because it is based on Plaintiff's reports of pain and decreased range of motion, both of which are subjective in nature.  A lack of supporting clinical findings is a valid reason for rejecting a treating physician' opinion.  *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  An ALJ may also reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints.  *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).[3]

Plaintiff points to her "well-established" need for a walker as support for the physician's findings.  AR 15.  Plaintiff is correct that on discharge from the hospital in July 2007, the physical therapist recommended a walker.  AR 186.  The ALJ acknowledged this recommendation, as well as Plaintiff's claims that she could only walk with a walker.  AR 28-29.  He declined to find that Plaintiff needed a walker to ambulate, and though he did not specifically state why he rejected the need for a walker, it is obvious from the decision that he did not believe Plaintiff's claimed need.  As the discharge notes from her July 2007 hospitalization note, "[h]er pain was so out of proportion and etiology was unclear and unexplained."  AR 185.  The same

---

[2] The name of the physician is not clear, though the first name appears to start with a "V" and the last name with an "S."  The physician treated Plaintiff at Community Medical Centers, where she received a majority of her treatment.  The ALJ classified the opinion as that of a treating source and Defendant does not contest this characterization.

[3] Plaintiff does not challenge the ALJ's credibility finding.

12

notes indicate that Plaintiff was making progress with her mobility and was ambulating to the door and around her room. AR 185.

Moreover, as Defendant notes, the record doesn't establish a *need* for a walker, but rather shows Plaintiff's *use* and/or *requests* for one. For example, in January 2008, Plaintiff requested a walker with a seat. AR 218. There is no indication that one was prescribed, though in February 2008, the physical therapist noted that she was using a wheeled walker with a seat. AR 316-321. Plaintiff was also using the walker in May 2008 and July 2009. AR 333, 345. Therefore, while Plaintiff may have been using a walker, there is no indication from any medical source that she needed a walker. Rather, it appears that she was given a walker based on her requests.

Plaintiff cites SSR 96-9p, which requires the adjudicator to consider "the particular facts of the case" in evaluating a medically required hand-held assistive device. This policy statement, however, explains why Plaintiff's claims are unsupported. To find that a walker is medically necessary, "there must be **medical documentation** establishing the need for a hand-held assistive device to aid in walking or standing, and **describing the circumstances for which it is needed** (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.") SSR 96-9p (emphasis added). Based on the record before the ALJ, Plaintiff cannot establish a medical need under SSR 96-9p.

Plaintiff next points to evidence that she believes contradicts the ALJ's conclusion that the treating source's opinion was not supported by objective evidence. For example, Plaintiff cites a CT scan showing a disc bulge at L5-S1, numbness on the left side, obesity, and prescriptions for morphine, Baclofen and Lyrica. The existence of evidence that may support Plaintiff's position, however, is not the correct standard of review. This Court does not conduct a de novo review and Plaintiff will not prevail simply because there is evidence supporting her position. *Richardson v. Perales*, 402 U.S. at 399; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Rather, the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or is based on legal error. *Matney v. Sullivan* 981 F.2d 1016, 1019 (9th Cir. 1992).

The Court recognizes the importance of the treating physician's opinion, but the opinion is not entitled to as much deference where it is not supported in the first instance. The ALJ ultimately found an RFC in between that of the treating source and Dr. Mehdi by adopting Dr. Ginsburg's opinion. As discussed above, the opinion of a non-examining source can constitute substantial evidence so long as it is not the sole evidence used to reject the treating source. Here, not only was the treating source's unsupported by objective evidence and based on Plaintiff's discredited subjective complaints, it was also contradicted by both Dr. Mehdi and Dr. Ginsburg. Although the ALJ did not adopt the higher RFC of Dr. Mehdi, he did explain that Dr. Mehdi's examination was essentially normal and that Plaintiff walked without a limp. AR 29. The ALJ concluded that Dr. Ginsburg's opinion was more consistent with the overall evidence and took into account the combined effects of Plaintiff's impairments, including her obesity and asthma. AR 29.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Kimberly Loring.

IT IS SO ORDERED.

Dated:   **September 1, 2011**          /s/ **Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE